UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 25 CR 360 (ER)

KENNETH THOM,

Defendant. Plea
------------------------------x

New York, N.Y.
March 19, 2026
10:30 a.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
BY: ALEXANDER LI
Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK, INC.
Attorneys for Defendant
BY: JOY CHEN
JENNIFER BROWN

Also Present:
Joseph Kim, FBI

(Case called)

MR. LI: Good morning, your Honor, Alexander Li for the government. Also present is FBI Special Agent Joseph Kim.

MS. CHEN: Good morning, your Honor, Federal Defenders, by Joy Chen and Jennifer Brown on behalf of Kenneth Thom, who is present.

THE COURT: Good morning to you all.

Mr. Li, what are we doing today?

MR. LI: Your Honor, we are here for a change of plea conference. The parties have reached a plea agreement, a copy of which has been submitted to the Court. At today's conference we respectfully request that the Court conduct a change of plea.

THE COURT: Ms. Chen.

MS. CHEN: That's correct, your Honor.

THE COURT: Very well.

Mr. Thom, your attorney has advised me that you wish to enter a plea of guilty. I'm happy to take your plea. However, before I do that, I need to ask you a series of questions.

Generally speaking, I am trying to make two determinations. I'm trying to determine in the first instance whether you understand what is going on here today and the consequences of pleading guilty and, secondly, I'm trying to determine whether you are in fact guilty to the crime to which

you wish to plead guilty. In order to make those determinations I have to ask you a series of questions. It's vitally important that you be absolutely truthful, so I am going to place you under oath. OK?

THE DEFENDANT: Yes.

(Defendant sworn)

THE COURT: Mr. Thom, you are now under oath and do you understand that if you answer any of my questions falsely, your answers could be used against you in a prosecution for perjury or for making a false statement?

THE DEFENDANT: Yes.

THE COURT: As I indicated, I am going to ask you some questions. If I ask you a question that you don't understand it, let me know that and I'll rephrase it, or if I ask you a question that you wish to speak with your attorneys before you answer, let me know that and I'll accommodate you. OK?

THE DEFENDANT: Yes.

THE COURT: We are going to start with some background questions.

Sir, what is your full name?

THE DEFENDANT: Kenneth Thom.

THE COURT: How old are you?

THE DEFENDANT: Forty-two.

THE COURT: How far did you get in school?

THE DEFENDANT: College.

THE COURT: Are you able to read and write in English?

THE DEFENDANT: Yes.

THE COURT: Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT: No.

THE COURT: Have you ever been treated or hospitalized for any mental illness or any type of addiction, including drug or alcohol addiction?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you taken any drugs, medicine, or pills, or have you consumed any alcohol?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, are you feeling well enough to proceed and to understand what is going on here today?

THE DEFENDANT: Yes.

THE COURT: Now, sir, your attorneys have informed me that you wish to enter a plea of guilty, is that correct?

THE DEFENDANT: Yes.

THE COURT: Have you had a full opportunity to discuss your case with your attorneys, including any possible defenses that you might have?

THE DEFENDANT: Yes.

THE COURT: Have you had a full opportunity to discuss

the consequences of entering a guilty plea with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorneys and their representation of you?

THE DEFENDANT: Yes.

THE COURT: Does either counsel have any doubt as to Mr. Thom's competence to enter a guilty plea at this time?

Mr. Li.

MR. LI: No, your Honor.

THE COURT: Ms. Chen.

MS. CHEN: No, your Honor.

THE COURT: Very well. On the basis of Mr. Thom's responses to my questions and my observations of his demeanor, I find that he is fully competent to enter an informed guilty plea at this time.

The next series of questions that we need to discuss, Mr. Thom, involve the rights that you are giving up by pleading guilty, including your constitutional rights, so, again, please listen very carefully.

First, you have the right to be represented by an attorney at trial and at every other stage of the proceeding. If you could not afford an attorney, an attorney would be appointed to represent you without cost to you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You have a right to a speedy and public trial by a jury on the charges against you which are contained in the indictment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial you would be presumed innocent and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty. You would not have to prove that you were innocent at trial.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If there were a jury trial, the jury would be composed of 12 people selected from this district and all 12 would have to agree unanimously that you were guilty before you could be found guilty.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: At trial you would have the right to see and hear all of the witnesses against you and your attorney could cross-examine them. Your attorney could object to the government's evidence and offer evidence on your behalf. You would also have the right to have subpoenas issued to compel witnesses to come to court to testify in your defense.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: At trial you would have the right to testify if you wanted to, but no one could force you to testify. And if you chose not to testify, I would tell the jury that it could not hold that against you.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you were convicted at trial, you would have the right to appeal that verdict.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that by entering a plea of guilty here today, you are giving up all of the rights that I have just described, except for your right to counsel, and you will be found guilty just based on your plea of guilty here today.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, do you understand that you can change your mind right now for any reason and decide that you did not want to enter a plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, have you received a copy of the indictment.

THE DEFENDANT: Yes, I did.

THE COURT: Have you had read the indictment?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the indictment with your attorneys?

THE DEFENDANT: Yes.

THE COURT: And do you understand that you are charged in Count Two of that indictment with investor advisor fraud?

THE DEFENDANT: Yes.

THE COURT: Mr. Li, what are the elements of that offense?

MR. LI: Your Honor, there are four elements to that offense as follows:

First, that the defendant was an investment advisor, that is, a person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in or purchasing or selling securities.

Second, that the defendant did one or more of the following: Employed a device, scheme, or artifice to defraud or engaged in a transaction, practice, or course of business that operated as a fraud or deceit upon a client or prospective client.

Third, that the defendant acted willfully, knowingly, and with the intent to defraud.

And, fourth, that the defendant used the mails or any means or instrumentality of interstate commerce.

THE COURT: Mr. Thom, did you hear what the prosecutor said?

THE DEFENDANT: Yes.

THE COURT: Sir, do you understand that if you did not plead guilty to Count Two, the government would have to prove each and every one of those elements beyond a reasonable doubt at trial?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, have you spoken with your attorneys about the possible punishment that you face if you were to plead guilty to this charge?

THE DEFENDANT: Yes.

THE COURT: Do you understand that this charge carries a maximum term of imprisonment of five years?

THE DEFENDANT: Yes.

THE COURT: It also carries a maximum term of supervised release of three years?

THE DEFENDANT: Yes.

THE COURT: And, in addition, there are financial penalties, including a $100 mandatory special assessment, that I must impose and a fine that I could impose that is the greater of either $250,000 or twice the gross gain from the offense or twice the gross loss to any victims of the offense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, sir, I use the term supervised release. Do you understand that supervised release means that you will be subject to monitoring and supervision when you are released from prison if I sentence you to a prison term?

THE DEFENDANT: Yes.

THE COURT: And that there are terms and conditions of supervised release with which you must comply. If you do not comply with them, you could be returned to prison without a jury trial.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if you do violate the terms or conditions of supervised release and are returned to prison, that new prison term could be for part or all of the term of supervised release, and you will not receive credit for time previously served in prison.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, do you understand that as part of your sentence I can also order you to pay restitution to any person injured as a result of your conduct?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, do you further understand that

if I accept your guilty plea and find you guilty, that determination may deprive you of certain valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm, and the right to hold certain professional licenses.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Were you born in the United States?

THE DEFENDANT: Yes.

THE COURT: The next series of questions involve the sentencing guidelines.

First, let me ask you, do you understand that there are sentencing guidelines that I must consider in determining the appropriate sentence in your case?

THE DEFENDANT: Yes.

THE COURT: Have you spoken with your attorneys about how the guidelines apply to your case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that I have to calculate the applicable guidelines range and then consider that range in determining what your sentence will be?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that I will not be

able to make that calculation until I receive a report known as the presentence investigation report that will be prepared by the U.S. Probation Office?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that before I get that final report, you and your attorneys will receive a draft of the report and will have an opportunity to review it.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that even after I calculate the applicable guidelines range in your case, I have the ability to impose a sentence that can be higher or lower than what the guidelines recommend?

THE DEFENDANT: Yes.

THE COURT: Sir, do you also understand that in addition to the sentencing guidelines, I also have to take into consideration a number of factors which are set forth in a law known as Title 18 of the United States Code, Section 3553, which would require me to consider a number of factors, including your history and characteristics and the nature of the offense to determine the appropriate sentence in your case.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So even after I calculate the applicable guidelines range, I have to consider these other factors and,

again, might settle on a sentence higher or lower than what the guidelines recommend.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: And, sir, do you understand that if your attorneys or anyone else has attempted to estimate or predict what your sentence will be, their estimate or prediction could be wrong?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: While it is perfectly appropriate for you and your attorneys to have discussed how the sentence will be calculated, no one can give you any assurance of what your sentence will be.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Now, I say all this to you, Mr. Thom, because you need to understand today that if your sentence is different from what your attorneys or anyone else told you it might be, or if it is different from what is contained in your agreement with the government, you will still be bound by your guilty plea, and you will not be allowed to withdraw your guilty plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, do you understand that if you are sentenced to a prison term, there is no parole in the federal system, and you will not be released early on parole?

THE DEFENDANT: Yes.

THE COURT: Now, the next series of questions that we need to discuss involve the plea agreement that you have with the government, and in that regard I have been provided with a letter, a seven-page letter, dated March 5, 2026. It's addressed to your attorneys. And at page 7 there are a series of signatures, including one that purports to be yours.

Can you see that from where you're seated, sir?

THE DEFENDANT: Yes.

THE COURT: Is that your signature on this page?

THE DEFENDANT: Yes.

THE COURT: This document will be marked as Court Exhibit number 1.

Mr. Thom, did you read this agreement before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you discuss it with your attorneys before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you fully understand the agreement when you signed it?

THE DEFENDANT: Yes.

THE COURT: Does this agreement include your understanding of the entire agreement between you and the government?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, is there any other agreement or any other promise about your plea or your sentence that is not contained in this agreement?

THE DEFENDANT: No.

THE COURT: Did anyone threaten you or force you to enter into this agreement?

THE DEFENDANT: No.

THE COURT: Other than what is in the agreement, has anyone promised you anything or offered you anything to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT: No.

THE COURT: Now, there is a stipulation in the agreement concerning the sentencing guidelines. It's referred to as a stipulated guidelines range.

Mr. Thom, do you understand that that stipulation binds you and it binds the government, but it does not bind me, and I am still going to make my own determination as to what the appropriate guidelines range is.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And there is also a provision in the agreement concerning any appeal, so that provision prevents you from challenging your conviction by way of appeal.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And it also prohibits you from appealing any sentence within or below the stipulated guidelines range.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by signing on to this agreement you are essentially giving up your right to appeal the sentence that I impose if I impose it within or below the stipulated guidelines range?

THE DEFENDANT: Yes.

THE COURT: Mr. Li, would you please summarize what the government would expect to prove if this case were to proceed to trial?

MR. LI: Yes, your Honor. I should add that, in addition to the elements I recited earlier, the government would also be required to prove venue by a preponderance of the evidence, and I will make a proffer as to venue.

THE COURT: Very well.

MR. LI: At trial the government's proof would include

the following: Facebook posts in which the defendant solicited investors into what he called shared accounts, Facebook accounts in which the defendant described his trading strategy for investor funds and the terms by which investors could deposit and withdraw funds into the shared accounts, Facebook posts in which Thom provided false updates on the performance of the shared accounts, bank records showing the funds that Thom received from his investors, as well as how he distributed those funds, which included distributions for his personal use, brokerage records showing the defendant's trading of securities purchased with investor funds and the true performance of those trades, bank and brokerage records showing that the defendant accessed accounts in which he traded investor funds from Manhattan, New York, victim testimony describing the defendant's interactions with them, as well as his cessation of those interactions, and the defendant's electronic communications with his investors.

THE COURT: Thank you, Mr. Li.

Mr. Thom, did you hear what the prosecutor said?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, have you understood everything that has happened here today so far?

THE DEFENDANT: Yes.

THE COURT: Mr. Thom, will you now please tell me in your own words what it was that you did that makes you guilty

of the crime charged in Count Two of the indictment.

THE DEFENDANT: Between 2023 and 2025, I acted as an investment advisor and solicited funds over Facebook from prospective clients. I represented I would invest the funds and take 50 percent of the profit. In reality, I didn't invest all of the money that I promised to invest, and I diverted some of the funds for personal use. I did falsely report positive returns to clients when I was also losing money. I knew it was wrong and illegal and I'm sorry.

THE COURT: Mr. Thom, when you did those things, did anyone threaten you or coerce you to do those things?

THE DEFENDANT: No.

THE COURT: Does counsel wish me to make any further inquiries?

Mr. Li.

MR. LI: Your Honor, just with respect to the defendant's intent, I believe he said that he acted with knowledge that what he was doing was wrong, but would the Court ask whether he acted with the intent to defraud.

THE COURT: Mr. Thom, did you act with the intent to defraud, to take the money from those victims?

THE DEFENDANT: Yes.

THE COURT: Anything else, Mr. Li?

MR. LI: No, your Honor.

THE COURT: Ms. Chen, do you wish me to make any

further inquiries?

MS. CHEN: No, your Honor. Thank you.

THE COURT: Ms. Chen, is there any reason why your client should not be permitted to plead guilty?

MS. CHEN: No, your Honor.

THE COURT: Ms. Chen, do you believe there is a adequate factual basis to support the plea of guilty?

MS. CHEN: I do.

THE COURT: Mr. Li, is there an adequate factual basis to support the plea of guilty?

MR. LI: Yes, your Honor.

THE COURT: Mr. Thom, how do you plead to the charge in Count Two of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you in fact guilty of that charge?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Is the government seeking forfeiture?

MR. LI: We are, your Honor.

THE COURT: There is a forfeiture allegation in the indictment, Mr. Thom. Do you admit to the forfeiture allegation, yes or no?

THE DEFENDANT: Yes.

THE COURT: Very well, Mr. Thom.

Because you acknowledge that you are in fact guilty as charged in Count Two of the indictment, because I find that you know your rights and are waiving them knowingly and voluntarily, with an understanding of the consequences of your plea, I accept your guilty plea and find you guilty on Count Two.

I will now direct that a presentence investigation be conducted by the U.S. Probation Office and that a presentence report be prepared. You will be interviewed by probation as part of that process, Mr. Thom. You can and should have your lawyers with you when you are interviewed.

As I indicated previously, you will also be receiving a draft of the report before I receive it. And when you receive the draft of the report, you should go over it very carefully with your lawyers and bring to my attention, through them, any mistakes that you may find therein.

It's also, by the way, entirely possible that the probation department may wish to interview members of your family with whom you live.

The presentence report is a very important part in my decision as to what your sentence will be, but you and your attorneys will also have the opportunity to speak on your behalf before I impose sentence.

Do we have a date for sentence?

THE DEPUTY CLERK: Yes. June 25, 2026 at 11 a.m.

THE COURT: Is there anything else that we should do today, Mr. Li?

MR. LI: No, your Honor.

THE COURT: Ms. Chen.

MS. CHEN: No, your Honor. Thank you.

THE COURT: In that event, we are adjourned.

Here is your original plea agreement.

We are adjourned.

(Adjourned)